Hatton Greer
Carlson Law Group, LLC
645 G Street, Suite 100, #558
Anchorage, AK 99501
P: 907.677.8111
F: 907.917.2075
Email: admin@bcarlsonlaw.com
      hatton@bcarlsonlaw.com

CJA Counsel for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 3:24-cr-00096-SLG-MMS |
|       Plaintiff, | ) | |
| vs. | ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| THURMAN REED | ) | |
|       Defendant. | ) | |

**COMES NOW**, Defendant Thurman Reed, by and through his counsel of record, Hatton Greer of Carlson Law Group, LLC, and hereby files his Sentencing Memorandum.

The plea agreement is under Rule 11 (c)(1)(C). It calls for a sentence of 180 months. Thurman pled guilty to Count 5, Possession of a Controlled substance with Intent to Distribute in violation of 21 U.S.C. § 841 (a)((1), (b)(1)(A), and Count 6 Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924 (c)(1)(A)(i).

///

## I. THURMAN'S LIFE AND CIRCUMSTANCES

Thurman is 67 years old. His occupation for most of his life was a truck driver and a rigger. A rigger is the person who makes sure a load is secured properly to the vehicle so that it does not fall or otherwise come loose.

Thurman was raised in a religious home, his father was a preacher and Thurman's brother, Sherman Lee Reed followed in their father's footsteps. Once Thurman lost his job, he was contacted by an old associate of his and began distributing drugs to be able to afford his bills.

Since his arrest, Thurman has turned his life around and gone back to his religious upbringing. While incarcerated he has earned 21 separate certificates totaling 174 hours of programming[1].

## II. THE COURT SHOULD VARY DOWNWARD AND SENTENCE THURMAN UNDER THE METHAMPHETAMINE MIXTURE GUIDELINE

The Supreme Court has repeatedly held that a district court may vary downward when it disagrees with the Guidelines range indicated by the drug quantity table where the resulting sentence would be "'greater than necessary' to achieve § 3553(a)'s purposes[2]." "[W]ith respect to the crack cocaine Guidelines," for example, a policy-based, "categorical disagreement with and variance from the Guidelines is not suspect[3]."

---

[1] Docket 46, Final PSR, Page 4-5. In addition, one of the certificates he earned, Transformation Living Community did not contain the amount of program hours.
[2] E.g., Kimbrough v. United States, 552 U.S. 85, 110 (2007) (noting that section 3553(a) requires a district court to impose a sentence that is "sufficient, but not greater than necessary," to achieve the goals of sentencing).
[3] Spears v. United States, 555 U.S. 261, 264 (2009) (per curiam).

DEFENDANT'S SENTENCING MEMORANDUM *United States v. Reed*
Page 2 of 9  Case No.: 3:24-cr-00096SLG-MMS
Case 3:24-cr-00096-SLG-MMS   Document 47   Filed 11/06/25   Page 2 of 9

In this district, in *United States v. Rodriguez*[4], Judge Burgess announced that he would routinely vary downward to sentence defendants found in possession of actual methamphetamine, or "ice," under the methamphetamine mixture guideline. The Court opined that the actual methamphetamine guidelines were: "grounded in outdated assumptions about purity of methamphetamine" and found that the:

> Guidelines methodology leads to…disparities [amongst defendants with similar records] and arbitrary differences. The enhanced base offense level for actual methamphetamine does not reflect culpability, severity of the offense, or proximity to the source, but today is often simply an indicator that lab testing was performed and received in time for sentencing[5].

Numerous other district courts have also found it appropriate to vary downward and sentence defendants under the mixture guideline[6]. The government has even conceded the premise of these decisions—that the 10-1 ratio in the actual methamphetamine guidelines is not supported by any empirical evidence—in litigation on this precise issue in the Northern District of Iowa[7].

The government might argue that the Sentencing Commission's inaction on this issue illustrates its support of the actual methamphetamine guideline. This argument would be misplaced. The Commission has numerous objectives. But given the huge crush of

---

[4] 382 F. Supp. 3d 892 (D. Alaska 2019).
[5] Rodriguez, 382 F. Supp. 3d at 897-898.
[6] United States v. Hartle, 2017 WL 2608221, at *1 (D. Idaho June 15, 2017); United States v. Ibarra-Sandoval, 265 F. Supp. 3d 1249 (D.N.M. 2017) (purity guideline "asks the Court to sentence defendants to harsher sentences than they deserve for purely arbitrary reasons"); United States v. Bean, 371 F. Supp. 3d 46 (D.N.H. 2019) (disagreeing with purity meth guideline); United States v. Johnson, 379 F. Supp. 3d 1213 (M.D. Ala. 2019) (Thompson, J.) ("[T]he court join[s] other courts in re-calculating the base-offense level by using the methamphetamine-mixture guideline, instead of the actual methamphetamine guideline."); United States v. Carrillo, 440 F. Supp. 3d 1148 (E.D. Cal. 2020) (same); United States v. Goodman, 556 F. Supp. 2d 1002 (D. Neb. 2008); United States v. Hayes, 948 F. Supp. 2d 1009 (N.D. Iowa 2013).
[7] United States v. Nawanna, 321 F. Supp. 3d 943, 950-951 (N.D. Iowa 2018)("Indeed, in its briefing and at oral arguments, the prosecution, to its credit and with great candor, did not challenge Nawanna's contention that the 10-to-1 ratio is unsupported by and not based on empirical evidence.").

DEFENDANT'S SENTENCING MEMORANDUM　　　　　　　　　　　　　　　　　*United States v. Reed*
Page 3 of 9　　　　　　　　　　　　　　　　　　　　　　　　　　Case No.: 3:24-cr-00096SLG-MMS
Case 3:24-cr-00096-SLG-MMS　　Document 47　　Filed 11/06/25　　Page 3 of 9

business it faces, it is forced to prioritize certain objectives during each amendment cycle, such as the implementation of the First Step Act of 2018[8]. The fact that some objectives are, out of necessity, prioritized over rectifying the actual/mixture disparity, does not reflect that the Commission continues to believe that a certain guideline is appropriate. In fact, Judge Carlton Reeves, the chair of the Sentencing Commission, addressed the actual methamphetamine disparity in a recent order he issued on this precise topic:

> The Guidelines use drug purity as a proxy for culpability. But national experience suggests that is no longer true for methamphetamine. The DEA data show that most methamphetamine confiscated today is "pure" regardless of whether the defendant is a kingpin or a low-level addict.
>
> Given the on-the-ground reality in methamphetamine cases, the better way to determine culpability is to examine all of the circumstances of the defendant's case and life –seeing the defendant as a "whole person," as the Supreme Court instructed in Concepcion. There are sentencing enhancements available for leaders, organizers, or managers of criminal enterprises. If the defendant's case warrants, those enhancements should be applied. In the context of methamphetamine, though, purity is no longer probative of the defendant's culpability[9].

In sum, the sentencing disparity in the Guidelines between actual methamphetamine and mixture lacks any kind of empirical basis or support. The Court should vary downward and sentence Thurman under the methamphetamine mixture guideline. Accordingly, Thruman's base offense level under that Guideline would be 36, or 33 after an adjustment for acceptance of responsibility[10].

///

---

[8] U.S. Sentencing Commission, Public Meeting at 5:15 (October 28, 2022), available at https://www.youtube.com/watch?v=re3KIGDoL9k.
[9] United States v. Robinson, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *3 (S.D. Miss. Dec. 23, 2022).
[10] Docket 46, Final PSR, Page 9, Paragraph 22, n. 2

DEFENDANT'S SENTENCING MEMORANDUM *United States v. Reed*
Page 4 of 9 Case No.: 3:24-cr-00096SLG-MMS
Case 3:24-cr-00096-SLG-MMS   Document 47   Filed 11/06/25   Page 4 of 9

### III. THERE WAS NO CREDIBLE THREAT OF VIOLENCE

The Government requested changes to the pre-sentence report regarding an incident that allegedly occurred on June 6, 2024 and was brought to the attention of the Federal Agents on June 7, 2024[11]. The USPO suggests that this should result in an enhancement under U.S.S.G § 2D1.1(b)(2)[12]. There are two reasons the court should not do this. Thurman denies this ever occurred. Alex Thomas, an investigator with the Federal Public Defender (hereinafter "FPD") spoke to the CHS regarding Thurman's case when this case was with the FPD. The CHS told Mr. Thomas to tell Thurman "hi."

This suggests one of two things. Either the incident the CHS relayed did not occur, or the CHS did not take it as a credible threat to use violence. More importantly, Thurman was living in his same residence from June 6th through his arrest in early September, for a period of three months. Federal Agents did not find the incident credible enough to move the CHS, or to immediately arrest Thurman.

There is one further reason to doubt the CHS was telling the truth. The report from the FBI states that Reed threatened to hurt the CHS[13]. However, it then says that "the CHS left the residence abruptly while Reed was still present and left their phone at the residence. Reed saw the CHS leave but would not have necessarily through the CHS was running away from Reed[14]." Frankly, if true, the fact that the CHS left the residence so abruptly that they left their phone at the residence, and left Reed in the residence, would make a

---

[11] Docket 46, Final PSR, Page 7, Paragraph 16a.
[12] Docket 46, Final PSR, Page 10, Paragraph 23.
[13] Reed_00001063
[14] *Id.*

DEFENDANT'S SENTENCING MEMORANDUM  *United States v. Reed*
Page 5 of 9  Case No.: 3:24-cr-00096SLG-MMS
Case 3:24-cr-00096-SLG-MMS    Document 47    Filed 11/06/25    Page 5 of 9

person suspicious anyway. However, this allegedly occurred directly after Reed threatened the CHS. The allegation as made by the CHS is far-fetched to say the least.

## IV.   U.S.S.G. 2D1.1(b)(2)

Should the court disagree and find that there was a credible threat of violence, the enhancement does not apply regardless by the terms of the U.S.S.G. The Final PSR suggests that there should be a 2-point enhancement to the offense level based on the alleged threat of violence. However, this enhancement is not allowed under U.S.S.G. 2K2.4 n. 4 (A). That guideline states in part;

> A sentence under this guideline also accounts for conduct that would subject the defendant to an enhancement under §2D1.1(b)(2) (pertaining to use of violence, credible threat to use violence, or directing the use of violence). Do not apply that enhancement when determining the sentence for the underlying offense[15].

Thus, Thurman should not be subject to a greater offense level due to the allegation made by the CHS. Nevertheless, Thurman requests the court hear evidence on this issue and determine whether factually Thurman *did* make a credible threat of violence, or indeed, any threat at all.

The court's determination can affect the custody level for Thurman, future placement or access to programming.

///

///

///

---

[15] U.S.S.G. 2K2.4 n.4 (A)

DEFENDANT'S SENTENCING MEMORANDUM  *United States v. Reed*
Page 6 of 9  Case No.: 3:24-cr-00096SLG-MMS
Case 3:24-cr-00096-SLG-MMS   Document 47   Filed 11/06/25   Page 6 of 9

## V. 18 U.S.C. § 3553 (a)(2)

18 U.S.C. § 3553 (a) generally covers the factors to be considered when imposing sentence[16]. This Sentencing Brief will focus on subsection (2) which outlines the factors to assess the need for the sentence imposed. Those factors are;

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;[17]

They will be addressed below in turn.

### A. Seriousness of the Offense, Respect for the Law and Just Punishment

Thurman is 67 years old and will receive a sentence of 15 years incarceration. While this is a serious offense, there are also hefty penalties being imposed; especially for someone who is 67 years old. Thurman will be 81 years old[18] when that sentence is completed; though Thurman has the ability to earn a bit over 2 years off if he does not have issues while incarcerated.

This is a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. The court should accept this Rule 11 agreement.

### B. To Afford Adequate Deterrence

---

[16] 18 U.S.C. § 3553 (a)
[17] 18 U.S.C. § 3553 (a)(2)
[18] Thurman has been incarcerated on this case for a bit over a year.

Thurman will have a 15-year sentence as stated *infra*. He will also have a minimum of 5 years of supervised release. The court has the option, because of his conviction on Count 5, to put Thurman on supervised release for the rest of his life. However, given his age, five years of supervised release may very well be the remainder of his life anyway.

### C. To Protect the Public From Further Crimes

While Thurman's agreed upon sentence is below the guideline range, there is no statistically significant relationship between an individual's length of stay in prison and his recidivism[19]." Furthermore, the older a person gets the less likely they are to recidivate.[20]

Given Thurman's age upon anticipated release, protection of the public should not prevent the court from accepting this agreement.

### D. Needed Educational or Vocational Training, Medical Care or Correctional Treatment

Thurman has job skills, as both a rigger and a truck driver. Given his anticipated age upon release, he is unlikely to be able to physically work those jobs. Thus, he may need vocational training at a less physical job. He has expressed interest in carpentry, HVAC, plumbing horticulture, commercial driver's license training, dog training and welding[21].

---

[19] *Coleman v. Schwarzenegger*, 922 F. Supp 2.d 882, 976 (E.D. Cal 2009).
[20] *The Effects of Aging on Recidivism Among Federal Offenders | United States Sentencing Commission*
[21] USPO Sentencing Recommendation Page 3.

DEFENDANT'S SENTENCING MEMORANDUM  *United States v. Reed*
Page 8 of 9  Case No.: 3:24-cr-00096SLG-MMS
Case 3:24-cr-00096-SLG-MMS   Document 47   Filed 11/06/25   Page 8 of 9

Thurman does need medical care, the diagnosed ailments are psoriasis, benign prostatic hyperplasia, scrotal varices, peptic ulcer, and pre-diabetes[22]. However, he also has persistent coughing and blood in his saliva which would need medical testing[23].

Finally, Thurman has done quite a bit of correctional treatment of his own initiative while in State custody awaiting the conclusion of this case. Thurman can do more programming if that is deemed applicable.

## VI. CONCLUSION

For all of the above reasons, the court should accept this agreement and sentence Thurman to the agreed upon sentence.

Respectfully submitted this 6th day of November 2025.

/S/ Hatton Greer
645 G Street, Suite 100, #558
Anchorage, Alaska 99501
P: 907.677.8111
F: 907.917.2075
Alaska Bar No.: 0311057

**CERTIFICATE OF SERVICE**
I HEREBY CERTIFY that on the 6th day of November 2025, a true and accurate copy of the Forgoing Document has been caused to be served via electronic filing to the parties, including:

AUSA Ainsley McNerney

/S/ Hatton Greer
Hatton Greer

---

[22] *Id.*

[23] *Id.*